Filed 10/7/13  P. v. Stark CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ARDEN EARL STARK III,<br><br>    Defendant and Appellant. | F063991<br><br>(Kings Super. Ct. No. 11CM1941)<br><br>**OPINION** |

-ooOoo-

**INTRODUCTION**

APPEAL from a judgment of the Superior Court of Kings County.  Thomas DeSantos, Judge.

Emry J. Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and Craig S. Meyers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

Appellant/defendant Arden Earl Stark III was charged with several offenses based on an incident when he violated a temporary restraining order and threatened to kill his wife. After a jury trial, he was convicted of count I, first degree burglary (Pen. Code,[1] § 459, subd.

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

(b)(1)); count II, criminal threats (§ 422); count III, dissuading a witness with threats of violence (§ 136.1, subd. (c)(1)); and count IV, misdemeanor violation of a court order (§ 273.6, subd. (a)). He admitted three prior strike convictions and was sentenced to the third strike term of 25 years to life.

On appeal, defendant contends his conviction for burglary is not supported by substantial evidence, and the court should have granted his request to dismiss one or more of his prior strike convictions. In addition, the People concede that a concurrent term should be stayed, and the abstract of judgment must be modified. We will order the abstract of judgment modified and otherwise affirm.

## FACTS

As of 2011, defendant and his wife, A.S., had been married for five years and had a young child. The family lived in a house with a roommate.

On or about May 11, 2011, A.S. asked defendant to leave the house.

Shortly thereafter, A.S. applied for a temporary restraining order against defendant; to stay 100 yards away from A.S. and their child, their residence, and their vehicle; not to contact them, directly or indirectly, and not to harass, threaten, block their movements, or stalk them; and to move out of the family residence. On May 20, 2011, a judicial officer signed the order, and the order was filed. The court ordered defendant not to have any child visitation.

On or about June 3, 2011, defendant was served with the order by the husband of A.S.'s roommate, and the proof of service was filed on that date. The temporary restraining order advised defendant that it would expire at 8:30 a.m. on June 13, 2011, at which time a hearing was scheduled to be held on the matter.

After defendant was served with the restraining order, A.S. did not have any direct contact with him. A.S.'s roommate communicated with defendant about visiting their child, and why A.S. made him leave.

2.

## Defendant confronts A.S. in the bedroom

At 2:30 a.m. on June 11, 2011, A.S. and her child were asleep in the bedroom of the house where they had lived with defendant. A.S. testified that all the doors were locked, except the door between the bathroom and the laundry room, which could not be locked. A.S. had the only set of keys to the house, and defendant did not have any keys even when he lived there.

A.S. testified that she woke up when she felt someone grab her ankle. She was startled and sat up quickly, and realized defendant was in her bedroom. A.S. told defendant he was not supposed to be there because of the restraining order and asked what he wanted. Defendant said he did not care, and he wanted to talk to her.

A.S. testified that defendant was upset and "pretty angry." Defendant said he wanted to know why she filed the restraining order and made him leave the house. Defendant said he loved her and their child, and he missed them. A.S. told defendant she was not ready to talk, and she did not want to talk to him.

A.S. testified she got out of bed, but she did not immediately try to walk out of her bedroom because she was afraid defendant would stop her. Defendant said he did not want her to leave. Defendant again said he wanted to talk "about why I did what I did." A.S. again said she was not ready to talk to him. Defendant was upset and felt he did not do anything wrong.

## Defendant threatens A.S.

A.S. told defendant she was going to call the police. Defendant became more upset. Defendant told A.S. that "if I was going to call the police, which he knew I was going to do, that he was going to kill me and him because he wanted to be with me no matter what."

A.S. walked toward the bedroom doorway. Defendant was standing near the doorway and stepped sideways toward it. A.S. thought defendant was angry and really upset. A.S. walked around defendant and headed toward her roommate's bedroom. Defendant put out his hand and tried to stop her, but he did not touch her.

3.

Defendant said he still loved her, and then he quickly left the house through the front door. A.S. woke up her roommate and called the police. A.S. testified the entire incident lasted 5 to 10 minutes.

A.S. testified that as a result of defendant's threats, she became scared and remained so for the rest of that night. A.S. testified defendant had never threatened to kill her during their most recent arguments. A.S. believed defendant was capable of killing her and himself. A.S. testified she was frightened because defendant had attempted to kill her in the past. About two years before the current incident, defendant tried to suffocate and strangle her. She never reported these incidents to the police.

## DISCUSSION

### I. <u>Substantial evidence of burglary</u>

Defendant contends his conviction for burglary must be reversed because there is no evidence he intended to commit any felony at the time he entered the residence. Defendant asserts that while he may have threatened to kill A.S., his intent to commit that act did not arise until after he entered the residence, when A.S. said she was going to call the police. Defendant thus asserts that he did not have any intent to threaten A.S. when he entered the house because he was not "clairvoyant" and could not have known that she would have threatened to call the police.

### A. <u>Substantial evidence</u>

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

"The standard of review is the same in cases in which the People rely mainly on circumstantial evidence. [Citation.] 'Although it is the duty of the jury to acquit a defendant

4.

if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.' " [Citations.]' [Citation.]" (*People v. Stanley* (1995) 10 Cal.4th 764, 792-793.)

## B. Burglary

Burglary involves the act of unlawful entry into a house or other specific structure, accompanied by the specific intent to commit grand or petit larceny or any felony. (§ 459; *People v. Montoya* (1994) 7 Cal.4th 1027, 1041.) One may be liable for burglary upon entry with the requisite intent, regardless of whether the felony or theft actually committed is different from that originally contemplated, or whether any felony or theft actually is committed. (*People v. Montoya, supra*, 7 Cal.4th at pp. 1041-1042.)

In order to constitute burglary, the defendant must intend to commit the felony at the time of entry. (*People v. Holt* (1997) 15 Cal.4th 619, 699.) "Because intent is rarely susceptible of direct proof, it may be inferred from all the facts and circumstances disclosed by the evidence. [Citations.] Whether the entry was accompanied by the requisite intent is a question of fact for the jury. [Citation.]" (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1245.)

"Where the facts and circumstances of a particular case and the conduct of the defendant reasonably indicate his purpose in entering the premises is to commit larceny or any felony, the conviction may not be disturbed on appeal [Citations.]" (*People v. Nunley* (1985) 168 Cal.App.3d 225, 232; *People v. Kwok, supra*, 63 Cal.App.4th at p. 1245.)

## C. Analysis

There is substantial evidence that defendant committed the burglary with the intent to commit a felony therein. A few weeks earlier, A.S. told him to move out of the house, and

she obtained the temporary restraining order. A.S.'s roommate served defendant with the restraining order on or about June 3, 2011. Thereafter, A.S. did not have any direct contact with defendant. Instead, her roommate communicated with defendant about visiting their child, and why A.S. made him leave.

The temporary restraining order advised defendant that the court would conduct a hearing on June 13, 2011, about whether to continue that order. Two days before that scheduled hearing, defendant violated that restraining order when he entered the house and went into the bedroom where his wife and child were sleeping.

Defendant concedes that he entered the residence "with the intent" to discuss the temporary restraining order with A.S., and "probably intended to find out if she intended to appear at and testify at the hearing …, and [he] probably hoped that she did not intend to do so." Defendant also concedes he "probably did intend to attempt to convince her not to testify at the hearing," if she told him that she was going to do so. However, defendant asserts there is no evidence that when he entered the house, he already had the intent to dissuade her from testifying, because his conduct was necessarily dependent on A.S.'s responses to his questions about what she intended to do. Defendant thus places the blame for this incident on A.S., because "the bare fact" that a hearing had been set "cannot be deemed substantial evidence that [defendant] had any information, or knowledge, of [A.S.'s] intentions," and if A.S. did not intend to go forward with the temporary restraining order, he would not have intended to commit the offense of dissuading a witness.

Defendant's arguments are specious and refuted by the record. Contrary to defendant's suppositions, the evidence demonstrates that he did not enter that bedroom to gently wake up his wife, tell his wife and child that he loved and missed them, or check on their well being. Instead, he arrived at 2:30 a.m., surreptitiously gained entry into the house, and woke up A.S. by grabbing her ankle. He was upset and angry, and demanded to know why she made him move out and why she obtained the temporary restraining order. He stood near the door so that she felt she could not walk out of the room. A.S. repeatedly said that he

6.

had to leave and she was not ready to talk to him. Defendant was undeterred and threatened to kill her and then kill himself "because he wanted to be with me no matter what."

The circumstantial evidence thus establishes that defendant entered the house and his wife's bedroom with the intent to commit the felonious offenses of criminal threats and dissuading a witness from testifying. His conduct was not triggered by A.S.'s entirely reasonable reaction of wanting to call the police. Instead, defendant knew the hearing on the restraining order was going to be held in two days, he displayed his anger and hostility toward A.S., and he used the threat of a homicide/suicide in an attempt to dissuade her from pursuing the court order and taking any action to keep him out of the house. Emotions related to dissension among marital partners involved in dissolution proceedings or restraining orders sometimes result in ill-conceived acts by parties who resist the reality of the situation. In evaluating the evidence before it, the jury concluded defendant's reaction was not a common reaction by an upset spouse, but instead a serious criminal act accompanied by the requisite mens rea. Defendant's conviction for burglary is supported by substantial evidence.

## II.   Denial of defendant's request to dismiss the prior strike convictions

Defendant next contends the court abused its discretion when it denied his request to dismiss one or more of his three prior strike convictions pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

### A.   Section 1385 and *Romero*

Section 1385 grants trial courts the discretion to dismiss a prior strike conviction if the dismissal is in furtherance of justice. (§ 1385, subd. (a); *Romero, supra,* 13 Cal.4th at pp. 529-530.) In deciding whether to dismiss a prior strike conviction, the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies…." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

7.

The trial court's decision not to dismiss a prior strike conviction is reviewed under the deferential abuse of discretion standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 371 (*Carmony*).) An abuse of discretion is established by demonstrating the trial court's decision is "irrational or arbitrary. It is not enough to show that reasonable people might disagree about whether to strike one or more of his prior convictions." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.) When the record shows the trial court considered relevant factors and acted to achieve legitimate sentencing objectives, the court's decision will not be disturbed on appeal. (*Ibid.*)

### B.     Defendant's record

According to the probation report, defendant (born 1972) was convicted of misdemeanor theft (§ 484) in Sacramento in 1991 and sentenced to three days in jail. In April 1991, he was placed on five years of formal probation after being convicted of second degree burglary in Sacramento. In November 1992, defendant was placed on three years of probation for his conviction of misdemeanor burglary in Fairfield.

In 1995, defendant was sentenced to 10 years in state prison for the convictions in Sacramento which constituted the three prior strikes in this case: rape by force or fear (§ 261, subd. (a)(2)); forcible sexual penetration with a foreign object (§ 289, subd. (a)); and arson (§ 451, subd. (d)). He was also convicted of second degree burglary in the same case.

In July 2004, defendant was released on parole, and he was discharged from parole in 2007.

In January 2009, defendant was placed on five years of probation in Kern County for misdemeanor driving with a blood-alcohol level over 0.08 percent. (Veh. Code, § 23152, subd. (b).) However, he was repeatedly found in violation of probation as he committed subsequent offenses. In October 2009, defendant was fined for the infraction of driving on a suspended license. (Veh. Code, § 14601.1, subd. (a)).

In April 2010, defendant was placed on three years of probation for misdemeanor driving under the influence of a controlled substance and was allowed to enter a drug

treatment program (Health & Saf. Code, § 11550, subd. (a)). In April 2011, he was placed on three years of formal probation for misdemeanor driving on a suspended license. (Veh. Code, § 14601.2, subd. (a).)

Defendant was on probation when he committed the instant offenses. Defendant had been employed as a mechanic but he was suspended after his 2008 conviction for driving under the influence. Defendant said he was using marijuana and methamphetamine on a daily basis when he was arrested in this case. Defendant also said he suffered from depression and received medication while in prison.

### C. The sentencing hearing

In the instant case, the amended information alleged that defendant had three prior strike convictions from 1995, based on the three offenses in Sacramento: rape by force or fear, forcible penetration with a foreign object, and arson. Defendant admitted the three prior strike convictions.

At the sentencing hearing, the court stated its intent to impose indeterminate third strike terms. The court noted that defendant's three prior strike convictions were from a single case, but all of the prior convictions were "of such significance so that the Court does not believe it should exercise its discretion in striking any of those particular strikes in this case."

Defense counsel asked the court to dismiss one or more of the three prior strike convictions pursuant to *Romero*. Defense counsel conceded the three prior strike convictions did not "paint a really pretty picture" of defendant. However, defense counsel argued the three convictions should be treated as one strike because the offenses were committed at the same time and in the same course of events.

Defense counsel also conceded the convictions in this case "paints a pretty horrific picture potentially," but argued defendant just wanted to talk to his wife while he was under emotional distress because of the failure of his marriage.

9.

The prosecutor replied that defendant's prior strike convictions in Sacramento were based on an incident where he broke "into a home of a wom[a]n he did not know, raping her, then setting her house on fire .…" The prosecutor argued defendant was a threat to society and to A.S., and his threat to kill her and then himself if she refused to dismiss the restraining order was very disturbing.

The court denied defendant's request to dismiss the prior convictions.

"[W]ith respect to the exercise of its discretion, the Court was looking at the defendant's record, but, again, I have no other evidence other than the record to show me that the defendant was charged with sexual penetration with a foreign object,… rape by force, fear …, and arson …, and it all occurred at the same date and time.

"The defendant did receive ten years state prison commitment in this matter, and so consequently when counsel argues that this happened 17 years ago, you have to take into consideration that a portion of that time, if not half, pretty much at least half of that time was spent in prison.

"With respect to the remaining, shall I say time, defendant still shows that he is or still willing to go outside the law, use drugs as shown by his 2010 conviction for [section] 11550 of the Health and Safety Code.

"In addition, what should be looked at here is the Court had issued a restraining order, even though it might have been temporary, and the defendant still chose to ignore it and come into his home.

"In the defendant's own letter to the Court, he seems not able to understand the fact that society has certain laws and rules that you have to abide by. He still wants to say that he's – he doesn't believe that, and I quote 'for breaking into my own house and trying to talk to my wife' and violating a restraining order he should get a life sentence.

"He doesn't understand that. Well, the situation is that is concerning. That is a statement that concerns the Court because you have to follow the Court's orders. To say you don't understand what that means is, and in reading this letter is tantamount to saying, 'look, I'll determine what's important and what's not important.' And that's what concerns me.

"So in this regard, the Three Strikes Law takes into consideration, I believe, People like [defendant] in this matter. People who don't follow the

10.

law.  People who are violent, and in this case we have almost a similar situation from the 1995 situation.

"This person actually breaks into … a house at night and scares the living day lights out of … [A.S.] and then threatens her with statements that maybe he didn't mean what he said, but, you know, when it's in the middle of the night, somebody's at the foot of your bed grabbing your foot and then not allowing you to leave through intimidation, maybe not necessarily grabbing somebody but through bodily intimidation, that is scary.

"So for that regard, the Court [chooses] not to exercise its discretion under [section] 1385 nor under *Romero* …."

The court sentenced defendant to 25 years to life for count I, burglary.

## D.    <u>Analysis</u>

As explained, *ante*, we review a ruling upon a request to strike a prior felony conviction under a deferential abuse of discretion standard.  (*Carmony*, *supra*, 33 Cal.4th at p. 371.)  "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it."  (*Id*. at p. 377.)

"For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss [citation].  Moreover, 'the sentencing norms [established by the Three Strikes law may, as a matter of law,] produce[] an "arbitrary, capricious or patently absurd" result' under the specific facts of a particular case.  [Citation.]

"But '[i]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations.  [Citation.] Where the record is silent [citation], or '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [citation].  Because the circumstances must be 'extraordinary ... by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], *the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary*.  Of course, in such an extraordinary case – where the relevant factors … manifestly support the striking of a prior conviction and no

11.

reasonable minds could differ – the failure to strike would constitute an abuse of discretion." (*Carmony*, *supra*, 33 Cal.4th at p. 378, italics added.)

Defendant contends he falls outside the spirit of the Three Strikes law because his prior strikes were from a single case, there is no evidence on an ongoing pattern of criminal conduct, the prior convictions were remote in time since they occurred in 1995, and his subsequent criminal conduct was limited to petty drug offenses. Defendant further asserts his history of untreated mental health problems and drug addictions also weigh in favor of dismissing the prior strike convictions.

Defendant's arguments are meritless. The instant case is not the type of extraordinary one contemplated by *Carmony*. The trial court herein carefully considered the enumerated factors and reasonably concluded defendant could not be deemed outside the spirit of the Three Strikes law, based on the nature of his criminal activity in both the prior strike convictions and the instant matter. In addition, defendant's criminal record began before the prior strike convictions, and continued after he was discharged on parole. Finally, the mere fact that defendant's three prior strike convictions arose from a single criminal action does not mean the court abused its discretion by declining to dismiss one or more. (See, e.g., *People v. Benson* (1998) 18 Cal.4th 24, 35-36; *People v. Scott* (2009) 179 Cal.App.4th 920, 930.)

On this record, the court's decision was "neither irrational nor arbitrary and [did] not constitute an abuse of its discretion." (*Carmony, supra,* 33 Cal.4th at p. 379.) Rather, since "the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the [Three Strikes] law," we must affirm its decision. (*People v. Myers, supra,* 69 Cal.App.4th at p. 310; *Carmony, supra,* 33 Cal.4th at p. 378.)

III.    **The third strike term for count II**

The court imposed the third strike terms of 25 years to life for count I, burglary; count II, criminal threats; and count III, dissuading a witness. The court ordered the term for count II to run concurrent to count I, and stayed the term for count III pursuant to section 654.

12.

Defendant contends, and the People concede, that the third strike term for count II should also have been stayed pursuant to section 654, instead of run concurrently to count I.[2]

## IV. Presentence Credit

Defendant contends, and the People concede, that he is entitled to one additional day of presentence conduct credit.

### DISPOSITION

The case is remanded to the superior court to amend the abstract of judgment to stay the term imposed for court II; and to state that defendant's presentence credits are 26 days instead of 25 days. The superior court is directed to forward a copy of the amended abstract of judgment to the appropriate authorities. In all other respects, the judgment is affirmed.

_____
Poochigian, Acting P.J.

WE CONCUR:


_____
Franson, J.


_____
Peña, J.

---

[2] Given the People's concession on section 654, we need not reach defendant's alternative argument about count II.