Filed 10/30/13  P. v. Young CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MITCHELL YOUNG, II,<br><br>    Defendant and Appellant. | D062966<br><br><br>(Super. Ct. No. SCD242212) |

APPEAL from a judgment of the Superior Court of San Diego County, Theodore M. Weathers, Judge.  Affirmed.

Koryn & Koryn and Sylvia Koryn, under appointment by the Court of Appeal, for the Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Julie L. Garland, Assistant Attorneys General, Meagan J. Beal and William M. Wood, Deputy Attorneys General for the Plaintiff and Respondent.

A jury convicted Mitchell Young, II, of one count of burglary (Pen. Code,[1] § 459). Following the jury verdict, Young admitted six prison priors (§ 667.5, subd. (b)). The court sentenced him to prison for the middle term of two years, struck the punishment for his fifth and sixth prison priors, and imposed one-year consecutive terms for each of the first four prison priors, for a total term of six years. The last three years were ordered suspended under section 1170, subdivision (h)(5)(B).

Young appeals, challenging the instructions given to the jury and the sentence imposed. He contends the trial court erred by declining to instruct the jury on voluntary intoxication and by giving the jury a consciousness of guilt instruction. He further contends the court did not obtain a knowing and voluntary waiver of his right against self-incrimination, right of confrontation, and right to a jury trial before accepting his admissions of his prior convictions, rendering his admissions invalid. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Around 9:00 a.m. on July 23, 2012, Philip Anguiano was standing in his girlfriend's garage in the Skyline Hills area of San Diego. Anguiano noticed Young walking on the other side of the street when Young said something to him that he could not hear. Young then asked Anguiano whose Mercedes-Benz was parked in the driveway across the street, and told Anguiano that he was going to take the car. Young also told Anguiano he was looking for work.

---

1   Statutory references are to the Penal Code unless otherwise indicated.

Suspicious, Anguiano entered his girlfriend's house and observed Young from a window. Anguiano watched him walk around the Mercedes-Benz, pick up a clothes hanger that he made into a hook, and use it to unlock the back door of the Mercedes-Benz. When Young opened the door, Anguiano noticed the window was slightly down, which Young then pushed back up with his hands. Young sat down in the back seat of the car, and began rifling through the car. Anguiano called police.

San Diego Police Officer Blake Williams arrived while Young was still in the back seat of the Mercedes-Benz. Officer Williams approached Young and asked him what he was doing. Young told the officer he was "at his friend's house." Officer Williams noticed Young had a piece of paper in his hand, and when he asked Young to step out of the car Young placed the piece of paper on the back seat. After placing Young in handcuffs, Officer Williams returned to the car and noticed a handprint on the window and a coat hanger on the seat. The piece of paper Young had been holding was a pay stub for Eric Rogers, the registered owner of the Mercedes-Benz.

In his written report of the incident, Officer Williams checked a box to indicate that Young was a possible narcotics user, described his demeanor as in a "stupor," and characterized his speech as "mumbling." However, the officer testified that Young did not appear to be intoxicated or under the influence of any narcotics. He did not smell any alcohol on Young, who spoke very little to the officer, preventing him from determining whether Young was intoxicated or under the influence of narcotics.

The Mercedes-Benz had been parked in the driveway of Rogers's parents' house for about two years. Rogers's mother had passed away and his father was in an assisted

3

living home, so Rogers and his brother were renovating the house. Rogers testified that he did not know Young and had not given him permission to enter his car.

DISCUSSION

I. *Instructional Error*

A. *Standard of Review*

A court does not err by giving a jury instruction where there is sufficient evidence to support the instruction. (*People v. Williams* (1997) 16 Cal.4th 635, 677; *People v. Howard* (2008) 42 Cal.4th 1000, 1025.) Sufficient evidence is evidence from which a reasonable jury could have concluded that the particular facts underlying the instruction did in fact exist. (*People v. Carr* (1972) 8 Cal.3d 287, 294.) A jury misinstruction is evaluated for prejudice under the *Watson* test. (*People v. Watson* (1956) 46 Cal.2d 818; *People v. Guiton* (1993) 4 Cal.4th 1116, 1129-1130; *People v. Breverman* (1998) 19 Cal.4th 142, 173, 176.) Unless we conclude there is a reasonable probability that a result more favorable to the appellant would have been reached in the absence of the alleged error in instruction, the judgment will be affirmed. (*Watson*, at p. 836.)

B. *Voluntary Intoxication Instruction*

Young contends he presented substantial evidence he was intoxicated during the burglary, and therefore the court erred by failing to instruct the jury with CALCRIM No. 3426 regarding voluntary intoxication.[2] Specifically, Young argues Officer Williams's

---

2     CALCRIM No. 3426 reads in part: "You may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way. You may consider that evidence only in deciding whether the defendant acted [or failed to do an act] with

4

report and testimony, along with Young's "bizarre behavior," could lead a jury to conclude that Young was intoxicated during the crime.

At the time of Young's offense, section 22, subdivision (b) provided: "Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent . . . ."[3] Burglary is a specific intent offense (*People v. Montoya* (1994) 7 Cal.4th 1027, 1052) and therefore Young was entitled to an instruction on voluntary intoxication if there was "substantial evidence of [his] voluntary intoxication and the intoxication affected [his] 'actual formation of specific intent.' " (*People v. Williams*, *supra*, 16 Cal.4th at p. 677.)

In *Williams*, the defendant sought a voluntary intoxication instruction based on a witness's testimony that he was "probably spaced out" when he committed the crime. (*People v. Williams*, *supra*, 16 Cal.4th at p. 677.) The defendant also pointed to statements he made to the police after the crime that he was "doped up" and "smokin pretty tough then." (*Ibid.*) *Williams* held this evidence was insufficient to warrant a voluntary intoxication instruction because, assuming the evidence would qualify as

_____ *<insert specific intent or mental state required, e.g., 'the intent to permanently deprive the owner of his or her property' or 'knowledge that . . .' or 'the intent to do the act required'>*. [¶] A person is *voluntarily intoxicated* if he or she becomes intoxicated by willingly using any intoxicating drug, drink, or other substance knowing that it could produce an intoxicating effect, or willingly assuming the risk of that effect." "An instruction on the significance of voluntary intoxication is a 'pinpoint' instruction that the trial court is not required to give unless requested by the defendant." (*People v. Rundle* (2008) 43 Cal.4th 76, 145, disapproved on another point in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

3    Section 22 was amended and renumbered in 2012 effective January 1, 2013, and is now section 29.4.

substantial, it failed to provide any support for the contention that the voluntary intoxication "had any effect on defendant's ability to formulate intent." (*Id.* at pp. 677-678.)

We conclude the court here correctly found the evidence was insufficient to show that Young was intoxicated in a manner that would cause him to lack the specific intent to burglarize. Young misreads Officer Williams's testimony. When asked if Young "appear[ed] to be intoxicated at all[,]" the officer responded: "No. I did not smell any alcohol on his person. And he spoke very little to me, so I was unable to tell if he was intoxicated or under the influence of anything." Officer Williams also testified that Young did not exhibit any symptoms of being under the influence of a narcotic. He explained that his statement in his report that Young was "mumbling" was simply referring to Young not speaking loudly. Other than the statements in Officer Williams's report, Young provides no evidence of intoxication. He did not testify, did not produce evidence of the amount of alcohol he assertedly consumed, and did not present any evidence regarding any cognitive impairment he was suffering from during the crime. Without any direct or expert testimony on this subject, the jury would be left to speculate whether Young was intoxicated at all. But even if we were to accept Officer Williams's report as substantial evidence of Young's intoxication, the voluntary intoxication instruction would still be unwarranted because, as in *Williams*, there was no evidence of the effect any such intoxication had on Young's ability to formulate intent. (*People v. Williams*, *supra*, 16 Cal.4th at pp. 677-678.)

6

C. *Consciousness of Guilt Instruction*

Over Young's objection, the court instructed the jury with CALCRIM No. 362 as follows: "If the defendant made a false or misleading statement before this trial relating to the charged crime, knowing the statement was false or intending to mislead, that conduct may show he was aware of his guilt of the crime, and you may consider it in determining his guilt. If you conclude that the defendant made the statement, it is up to you decide its meaning and importance. However, evidence that the defendant made such a statement cannot prove guilt by itself." Young contends the court erroneously gave this consciousness of guilt instruction because it caused the jury to make an inference that was unsupported by the facts, and it was an improper pinpoint instruction that "improperly shifted the balance of instructions" against Young in violation of his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution.

A consciousness of guilt instruction is proper when there is evidence from which the jury could reasonably find that a defendant's false statements were made to deflect suspicion from himself, reflecting consciousness of guilt. (See *People v. Howard*, *supra*, 42 Cal.4th at p. 1025.) When Officer Williams first approached Young while he was in the back seat of the Mercedes-Benz, Young sought to justify his presence by telling Officer Williams he was at his friend's house. But Rogers testified that he did not know Young, and there is no evidence any other person at Rogers's parent's house was, or claimed to be, Young's friend. On this record, a jury could reasonably find Young's

7

statement that he was "at his friend's house" was false and made to mislead the officer to deflect any suspicion as to his presence in the parked car.

Young also argues the consciousness of guilt instruction was an improper factual pinpoint instruction that "shifted the balance of instructions" against him in violation of his right to due process. The California Supreme Court has consistently upheld consciousness of guilt instructions because "it can be inferred rationally that false statements regarding a crime show a consciousness of guilt . . . ." (*People v. Griffin* (1988) 46 Cal.3d 1011, 1027; *People v. Howard*, *supra*, 42 Cal.4th at p. 1025 [rejecting the argument that a consciousness of guilt instruction violates a defendant's due process rights].) Moreover, a consciousness of guilt instruction is not an improper pinpoint instruction because it tells the jury they *may* consider the evidence of false statements, but the evidence *cannot prove guilt by itself*. (See *People v. Arias* (1996) 13 Cal.4th 92, 142; *People v. Kelly* (1992) 1 Cal.4th 495 ["If the court tells the jury that certain evidence is not alone sufficient to convict, it must necessarily inform the jury, either expressly or impliedly, that it may at least consider the evidence"].) We may not disregard the Supreme Court's holdings on consciousness of guilt instructions (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455) and therefore reject Young's claim that the consciousness of guilt instruction violated his due process rights under the Fifth and Fourteenth Amendments of the United States Constitution.

## II. *Claim of Deficient Advisements*

### A. *Background*

After both sides rested, Young waived his right to a jury trial on his six prison priors. The trial court explained the People's charges with regard to the prior prison terms, Young's right to a jury trial on the prison priors, and confirmed Young understood the allegations against him. The following exchange occurred:

"[The Court]: Mr. Young understands that he has a right—if there is a conviction for the charge in count one, the burglary count, the felony, Mr. Young would have the right to have the same jury determine whether or not the prison priors that are alleged in the information are true. He also has the right to waive that jury trial if he so desires. Have you and he discussed his right to a jury trial on the priors?

"[Defense counsel]: We have, your honor. And just—he's indicated to me that he would not like a jury trial on the priors. And I'm just going to confer with him for one brief moment to ensure that that is still where he stands.

"[The Court]: Okay.

"[Discussion held off the record.]

"[Defense counsel]: He maintains his position that he does not want a jury trial on the priors.

"[The Court]: Okay. So, Mr. Young, you understand that you do have—if there is a conviction for the burglary charge, you would have the right to have the same jury hear about your prison priors. Do you understand that?

"[Young]: Yes.

9

"[The Court]: And then they would determine whether or not the People have proved up those prison priors beyond a reasonable doubt or not. Do you understand that?

"[Young]: Huh-uh.

"[The Court]: Yes. So let me tell you. So the same jury would hear the People's evidence about the prison priors.

"[Young]: Okay.

"[The Court]: Okay? And they would have to determine whether the People have proved those prison priors beyond a reasonable doubt. You understand that? Basically, it's a jury trial on the priors. So, Mr. Young, you seem to indicate that you don't understand what I'm saying, so let me try to start over and explain it a little bit better. [¶] So what we are asking is whether or not you want the jury to—if you want a jury trial on your priors. Do you understand that?

"[Young]: Yes.

"[The Court]: And [defense counsel] has indicated that, after speaking with you, you told her that you don't want a jury trial on the priors. Is that correct?

"[Young]: That's correct.

"[The Court]: Okay. Do you have any questions about your rights to have a jury trial on the priors?

"[Young]: No, sir.

"[The Court]: No? And you are willing to give up those rights and waive a jury trial at this time; correct?

"[Young]: Correct.

10

"[The Court]:  All right.  Any questions about that?

"[Young]:  No, sir."

After the jury returned its verdict, the court summarized each of Young's prior convictions, and Young admitted them.  The court then found Young had made a voluntary and intelligent waiver of his right to trial, stating, "The Court believes that Mr. Young has been fully advised of his right to a trial.  He has waived his right to both a jury trial as well as a court trial on the issue of the priors.  He has admitted, and I believe that he has knowingly and intelligently waived those rights and made his admission to those six prison priors.  So the Court will find each of those six prison priors to be true."

B.  *Analysis*

Before accepting a criminal defendant's admission of a prior conviction, a trial court must advise the defendant of the right to a jury trial on the prior, the right to remain silent, and the right to confront adverse witnesses.  (*In re Yurko* (1974) 10 Cal.3d 857, 863.)  If the defendant makes an express waiver of these rights, or under the totality of the circumstances the admission was voluntarily and knowingly made, the admission stands.  (*People v. Mosby* (2004) 33 Cal.4th 353, 360-361.)  Young contends the prior conviction enhancements should be stricken because the trial court did not fully advise him of his rights before he admitted his six prior prison terms.  He maintains the court did not inform him following the jury's guilty verdict of his right to a trial, his right to remain silent, or his right to confront adverse witnesses.

In making these arguments, Young fails to acknowledge the discussion he had with the Court regarding his right to a jury trial on his prison priors immediately after

11

both sides rested.  He instead compares his situation to *In re Candelario* (1970) 3 Cal.3d 702, a case in which the Supreme Court was confronted with the difference between clerical and judicial error in amending a judgment to include a prior conviction.  (*Id.* at p. 705.)  *Candelario* does not discuss proper advisements prior to a defendant's admission of prison priors, but instead addresses a trial court's jurisdiction to later amend an abstract of judgment to include a prior conviction that was not referenced in the pronouncement of judgment.[4]  (*Ibid.*)  We disagree with Young's assertion that the Court in this case "effectively did the same thing" by imposing a sentence "premised on findings that had never been made."  Here, the trial court took Young's waiver of all of his prior convictions, found them to be true, and they are reflected in the abstract of judgment.  Accordingly, there is no question as to the trial court's jurisdiction, and Young's comparison is without merit.

---

[4]    In *In re Candelario*, *supra*, 3 Cal.3d 702, a defendant convicted of selling heroin admitted having received a prior felony conviction for possession of marijuana.  The prior conviction, however, was not mentioned in the oral pronouncement of judgment, the minute order of judgment, or the original abstract of judgment.  (*Id*. at p. 706.)  Over a month later, the trial court filed an amended abstract of judgment including the prior conviction.  (*Id*. at pp. 704-706.)  The California Supreme Court held the attempted amendment was invalid on the ground that the court's failure to include the prior conviction in the judgment could not be presumed an inadvertent clerical error: "Admission of the prior offense . . . does not thereby relieve the court of its responsibility to pronounce judgment finding petitioner guilty of the substantive offense with a prior conviction, and to have such judgment entered in the official records of the court.  [¶] Reference to the prior conviction must be included in the pronouncement of judgment for if the record is silent in that regard, in the absence of evidence to the contrary, it may be inferred that the omission was an act of leniency by the trial court.  In such circumstances the silence operates as a finding that the prior conviction was not true." (*Id*. at p. 706.)

12

Young also relies on *People v. Torres* (1996) 43 Cal.App.4th 1073, a case that was subsequently disapproved by *Mosby*, *supra*, 33 Cal.4th 353. Under the circumstances of this case, *Mosby* is controlling. In *Mosby*, the court found a defendant's admission of his prior conviction voluntary and intelligent, despite the absence of the defendant's waiver of his rights to remain silent and to confront adverse witnesses. (*Id.* at pp. 356, 360, 363-365.) There, the trial court had expressly advised the defendant of his right to a jury trial on his prior conviction allegation, and the defendant expressly waived that right, admitting the truth of that allegation. (*Id.* at pp. 358, 364.) On appeal, the defendant argued the trial court committed reversible error by failing to advise him of his other two rights. (*Id.* at p. 364.) The Supreme Court held the defendant's understanding and whether he knowingly waived constitutional rights was informed by the entire record of the proceedings, because "previous experience in the criminal justice system is relevant to a recidivist's ' "knowledge and sophistication regarding his [legal] rights." ' " (*Id.* at p. 365, in part citing *Parke v. Raley* (1992) 506 U.S. 20, 36-37.) The defendant in *Mosby* had just participated in a jury trial at which he did not testify, and during the trial his counsel confronted witnesses. (*Mosby*, 33 Cal.4th at p. 365.) Also, his prior conviction was based on a plea of guilty, in connection with which he would have received the requisite advisements. (*Ibid.*) Thus, the California Supreme Court held that under the totality of the circumstances, the Court of Appeal did not err by concluding the defendant had voluntarily and intelligently admitted his prior conviction despite being advised of and having waived only his right to a jury trial. (*Ibid.*)

Young contends his prior experience with the criminal justice system is insufficient to prove his knowledge of the right to remain silent and right to confront witnesses.  However, Young's interpretation of the totality of the circumstances fails to acknowledge that he waived his right to a jury trial on his prison priors just minutes after trial concluded on the substantive offenses.  As in *Mosby*, Young did not testify at his trial and his attorney confronted adverse witnesses.  Additionally, Young has an extensive criminal record, with at least six prior convictions, from which a court can infer he has " ' "knowledge and sophistication regarding his [legal] rights." ' "  (*People v. Mosby, supra*, 33 Cal.4th at p. 365.)  Based on this record, we conclude under the totality of the circumstances Young made a voluntary and intelligent admission of his prison priors.

DISPOSITION

The judgment is affirmed.


                                                                    O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


HALLER, J.