Filed 11/7/13  P. v. Gaines CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>RODNEY LOUIS GAINES,<br><br>　　　　　　Defendant and Appellant. | B245974<br><br>(Los Angeles County<br>　Super. Ct. No. MA056644) |

APPEAL from the judgment of the Superior Court of Los Angeles County. Richard E. Naranjo, Judge.  Affirmed.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Pamela C. Hamanaka, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

A jury found defendant and appellant Rodney Louis Gaines guilty of second degree burglary and simple assault. He appeals, contending there is insufficient evidence supporting his conviction for burglary, specifically no evidence showing an intent to commit a felony upon entering the business establishment where the incident occurred. We conclude there is substantial evidence in the record supporting the judgment of conviction and therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

At around 11:00 p.m. on June 24, 2012, Luis Gomez-Alcala (Alcala) was working as a cashier at a gas station on West Avenue K in Lancaster. The gas station included a small convenience store selling drinks, cigarettes, snacks and similar items. Mr. Alcala was inside the store assisting a customer when the customer told him there was a man outside near the gas pumps asking for money and bothering the customers. Part of Mr. Alcala's assigned job duties was to tell panhandlers at the station to leave the premises.

After the customer finished paying, Mr. Alcala went outside and saw defendant near the gas pumps. Defendant had a black backpack, as well as a bicycle with several bags on it. Mr. Alcala told defendant to stop "molest[ing] my customer[s];" that if he did not stop he would have to call the police or he would get in trouble with his manager. Defendant responded calmly, said "okay" and left the premises.

After some time had passed, two more customers complained there was a man bothering them outside and asking for money. Mr. Alcala looked out the window and saw that defendant had returned and was again by the gas pumps. He again went outside and told defendant to leave. Defendant was angry, spoke in a loud voice and mocked Mr. Alcala. Mr. Alcala raised his voice as well and reiterated that he had to leave. Mr. Alcala then went back inside the store, but saw that defendant still had not left. He went back outside and told defendant he had to go. Defendant "was more aggressive. . . . He [got] madder." Defendant told Mr. Alcala he was only trying to get money to eat and Mr. Alcala had no right to tell him to leave or call the police. Defendant eventually left

2

the gas station. On cross-examination, Mr. Alcala conceded he may have testified at the preliminary hearing that he only dealt with defendant twice, and not three times.

Around 1:00 a.m., Mr. Alcala was inside the store, waiting for a couple of customers to decide what they were going to purchase. While behind the register, Mr. Alcala was not protected by any bullet-proof glass, nor did he have access to any weapon to use in self-defense. Defendant entered the store, wearing the same black backpack Mr. Alcala had seen him with earlier. Defendant immediately began yelling at Mr. Alcala, as well as pointing and gesturing in his direction. The couple that was in the store appeared to Mr. Alcala to be scared by defendant's conduct and left.

Mr. Alcala felt nervous because of defendant's aggressive behavior, and he did not know if defendant had some sort of weapon. Mr. Alcala started to back away and grabbed his cell phone so he could call 911. Mr. Alcala was afraid and thought defendant was going to hurt him. Mr. Alcala became more scared because defendant kept yelling louder and coming closer to him. Defendant yelled obscenities at Mr. Alcala, such as "Don't you ever f----n talk to me like you did before you bitch . . . if you, f--- you and the cops mother f----n bitch. If you ever talk to me like that again I'm gonna go over this counter and beat the f--- out of you, punk. Think I'm lying, you think I'm lying? I'm gonna beat your mother f----n ass, you bitch. F--- you." "I'm a soldier, mother f----r. Call the cops you bitch. You don't know who you're f----g with, dude." Mr. Alcala felt defendant had threatened to hit him and "beat" him. Portions of the video surveillance tapes from inside the store showing the incident, including the words defendant yelled at Mr. Alcala, were played for the jury.

Defendant then picked up one of the empty cash register trays and threw it at Mr. Alcala. Mr. Alcala moved quickly to one side and avoided being hit in the face. Mr. Alcala told defendant he needed to control himself or he would call the police. Defendant was only about four feet away and did not stop yelling at Mr. Alcala, so he called 911. Defendant then abruptly left the store and Mr. Alcala saw him riding his bike down West Avenue K. The deputy sheriffs arrived in a few minutes. Defendant was

3

detained about a mile from the gas station, no weapons were found on him, and the arresting deputy did not believe he appeared to be under the influence.

Defendant was charged by amended information with one count of making criminal threats (Pen. Code, § 422, subd. (a)[1]; count 1), one count of assault with a deadly weapon (§ 245, subd. (a)(1); count 2), and one count of second degree burglary (§ 459; count 3). It was also specially alleged defendant had suffered four previous convictions that qualified as serious felonies pursuant to section 667, subdivision (a)(1), and as strike priors pursuant to sections 667, subdivisions (b) through (i) and 1170.12, subdivisions (a) through (d). Nine prior convictions were alleged to qualify as prior prison term convictions pursuant to section 667.5, subdivision (b). Defendant pled not guilty and moved to represent himself. The court made the requisite admonitions and determined defendant voluntarily and intelligently waived his right to appointed counsel.

The case proceeded to trial by jury in November 2012. The jury returned a verdict acquitting defendant on counts 1 and 2, but convicting defendant on the lesser included charge of misdemeanor assault (§ 240) as to count 2. The jury also convicted defendant of second degree burglary in count 3.

Defendant waived his right to a jury trial on the bifurcated prior conviction allegations. In a separate proceeding, the trial court struck the prison priors based on evidence the most recent prior from 2006 had been overturned on appeal. As for the prior strikes, the court determined that, pursuant to the Three Strikes Reform Act of 2012, the case qualified only as a second strike case for sentencing purposes.

The court sentenced defendant to state prison for four years, consisting of the midterm of two years, doubled because of a prior strike. The court imposed and stayed a concurrent six-month jail term for the simple assault. Defendant was awarded total presentence custody credits of 381 days, and ordered to pay various fines and fees.

---

[1]    All further undesignated section references are to the Penal Code.

This appeal followed.[2]

## DISCUSSION

Defendant's sole contention on appeal is that there is insufficient evidence supporting his conviction for burglary. Specifically, defendant argues his conviction for burglary is not supported by substantial evidence of the requisite specific intent. We are not persuaded.

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence--that is, evidence that is reasonable, credible, and of solid value--such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) " 'Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]' [Citation.]" (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

The jury found defendant guilty of second degree burglary. "The crime of burglary consists of an act--unlawful entry--accompanied by the 'intent to commit grand or petit larceny *or any felony*.' (§ 459.)" (*People v. Montoya* (1994) 7 Cal.4th 1027, 1041, italics added.) As defendant concedes, "[o]ne may [be] liable for burglary upon entry with the requisite intent to commit a felony or a theft . . . whether any felony or theft actually is committed." (*Id*. at pp. 1041-1042; see also CALCRIM No. 1700.)

At trial, defendant did not contest he entered the store where Mr. Alcala was working behind the register. Plainly, the video surveillance tape shown to the jury

---

[2]     On February 13, 2013, defendant filed, in pro. per., a petition for writ of habeas corpus (case No. B246805). We dispose of the petition by separate order.

established he did so. Defendant contended he did not enter the store with the specific intent to commit either a criminal threat or assault with a deadly weapon.

"Because intent is rarely susceptible of direct proof, it may be inferred from all the facts and circumstances disclosed by the evidence." (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1245.) The jury was presented with the testimony of Mr. Alcala, supported by the surveillance video, that after encounters between defendant and Mr. Alcala escalated in hostility over more than an hour, defendant returned to the store. Defendant entered and immediately pointed and yelled at Mr. Alcala, frightening the two customers into leaving the store. Defendant acted increasingly aggressively, moving toward Mr. Alcala, and eventually throwing a cash register tray in the direction of Mr. Alcala's head. The record and reasonable inferences therefrom solidly support a determination that defendant entered the store with the specific intent to criminally threaten Mr. Alcala and put him in fear of defendant. Defendant has not persuaded us there is any basis for disturbing the jury's verdict. " 'Before a judgment of conviction can be set aside for insufficiency of the evidence to support the trier of fact's verdict, it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support it.' [Citation.]" (*Ibid*.)

## DISPOSITION

The judgment of conviction is affirmed.

GRIMES, J.

We concur:

BIGELOW, P. J.

FLIER, J.

6