Filed 11/20/14  P. v. Strickland CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LEROY STRICKLAND,<br><br>    Defendant and Appellant. | B254195<br><br>(Los Angeles County<br>Super. Ct. No. NA096686) |

APPEAL from a judgment of the Superior Court of Los Angeles County.
Richard R. Romero, Judge.  Affirmed.

Hancock & Spears, Alan E. Spears for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Chung L. Mar and Idan Ivri, Deputy Attorneys General for Plaintiff and Respondent.

_____

Appellant Leroy Strickland was convicted, following a jury trial, of one count of second degree burglary in violation of Penal Code section 459. The trial court sentenced appellant to the low term of 16 months in county jail.

Appellant appeals from the judgment of conviction, contending there is insufficient evidence to support his conviction. We affirm the judgment of conviction.

FACTS

At about 4:30 p.m. on August 27, 2013, asset protection associates at a Wal-Mart store in Torrance were watching customers on the store's surveillance system. Kevin Merritt saw appellant and considered his actions suspicious. Merritt watched appellant enter the electronics department with empty hands, crouch down in the cell phone accessory area, then stand up and leave the department carrying two pieces of merchandise. Merritt identified the items as a cell phone case and a "Passport" hard drive device.

Appellant went to the sporting goods department with the merchandise in his hands. There, he opened the packaging on the items, then placed the empty packaging on a shelf. Merritt testified that he saw appellant conceal the case and "Passport" on his person. Video of appellant showed him leaving the department with nothing in his hands.

Appellant went to the front of the store, walked past the cash registers without stopping and left the store. He was approached by Edgar Luna and Nicholas Faustino, who were Wal-Mart asset protection associates. They asked appellant to come back into the store. He agreed. As they all walked toward the office, appellant turned around and tried to push past the associates toward the exit. Appellant said he needed to go to his car. Luna told appellant he needed to go to the office first. Appellant continued to try to push past the associates. Luna and Faustino, joined by Merritt, forcibly moved appellant into the office.

Once inside the office, appellant was cooperative. Merritt and Luna stated that appellant took a "Passport" device and cell phone case from his pocket and placed them

2

on the table.[1] Appellant also had a mobile hot spot device. According to the associates, the "Passport" device and the case looked brand new and matched the packaging recovered by Faustino from the sporting goods department. Faustino scanned the bar codes, and Wal-Mart's computer system showed each item's description and price. The items were then put in a bin to be sorted out by a claims associate and eventually either sold to a customer or sent back to the manufacturer. They were not retained as evidence. The mobile hot spot device was returned to appellant.

Los Angeles Police Department Officer Thomas Vago came to Wal-Mart and took appellant into custody. Officer Vago searched appellant and found $193 in his pocket.

Appellant testified in his own defense at trial. He is an attorney who practices in Florida, Pennsylvania, Ohio and New York. On August 26, 2013, he arrived in California to represent Mohammed Mouchtachar in an immigration matter. He planned to stay at Mouchtachar's home. Mouchtachar did not have internet service at his home and so appellant used his mobile hot spot device. On August 27, appellant went shopping for a case for his hot spot. After checking several stores unsuccessfully, appellant went to Wal-Mart. When he entered the store, he had his hot spot, a cell phone and a hard drive case on his person.

Inside Wal-Mart, appellant went to the electronics department to look for a case. He saw a hard drive which was on sale for a good price, and picked it up. He wanted to buy the hard drive, but only if its charging cable was compatible with his hot spot device.

Appellant went to the sporting goods department to look for a sleeping bag to use at Mouchtachar's house. Appellant was in a hurry at that point, and decided to open the hard drive package to test the compatibility of the cable. The cable did not fit his hot spot, so he decided not to buy it. He put the packaging and hard drive on a shelf. He believed the cable might have fallen on the floor. Before leaving the department, he looked for a sleeping bag but did not see one.

---

[1]    Faustino testified that the "Passport" device fell out of appellant's pocket during the struggle outside the office.

Appellant left the store and was stopped by men he assumed were with store security. They asked him to come back inside the store. Appellant agreed. The men wanted him to go into a room, but appellant refused because he did not trust them. He told them to search him outside. He said he would go into the office if he could first tell Mouchtachar what was happening.

One of the men pushed appellant and threatened to call the police. Appellant went with the men into a room. Inside the room, a hard drive case, a hot spot device and a wallet were removed from appellant's possession and placed on a table. Eventually, appellant was able to call Mouchtachar, who came inside the store. An officer gave Mouchtachar a bag containing appellant's wallet, hot spot device and a few other personal items.

## DISCUSSION

Appellant contends there is no substantial evidence that any property found on his person after he left the Wal-Mart store belonged to Wal-Mart, and so there is insufficient evidence to support his conviction for burglary.

"In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence and to special circumstance allegations. [Citation.] [I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] We do not reweigh evidence or reevaluate a witness's credibility. [Citations.]" (*People v. Nelson* (2011) 51 Cal.4th 198, 210 [internal quotation marks omitted].)

4

"Every person who enters any . . . store . . . with intent to commit grand or petit larceny or any felony is guilty of burglary." (Pen. Code, § 459.) In order to be convicted of the offense of burglary, there must be evidence that the defendant intended to commit theft or another felony at the time of entry. (*People v. Holt* (1997) 15 Cal.4th 619, 668.)[2] The existence of the requisite intent is rarely shown by direct evidence, but may be inferred from the factual circumstances. (*Ibid.*)

Appellant correctly contends there is no independent evidence that he entered the store with the intent to commit theft. Appellant agrees such intent could properly be inferred from the actual commission of a theft, but contends there is no evidence that he took any Wal-Mart property.

There is more than sufficient evidence to show that appellant was in possession of a "Passport" device and cell phone cover belonging to Wal-Mart when he left the store, and that he did not pay for those items. As described in more detail in the facts section of this opinion, Merritt testified that he observed appellant pick up Wal-Mart merchandise, unwrap it and put it in his pocket. The jury saw a recording of the videos Merritt watched. Appellant left the store. When he returned to the store at the request of asset protection associates Luna and Faustino, a cell phone case and a "Passport" device were in his pockets. These two items appeared brand new and matched the empty packaging that had been retrieved from the sporting goods department. Faustino confirmed that the bar codes on the packaging were in Wal-Mart's computer system.

Appellant contends this evidence is not substantial evidence because Wal-Mart did not produce the allegedly stolen items at trial and there is no proof that those items came from the open packages; Merritt described the device taken from appellant as both a "Passport" and a "hot spot" and Wal-Mart conceded it had no proof that the hot spot

---

[2] A defendant is still guilty of burglary if he enters with the intent to commit one felony, but ultimately commits a different felony. (*People v. Montoya* (1994) 7 Cal.4th 1027, 1041-1042.)

belonged to Wal-Mart; Merritt testified that appellant concealed the items in his pockets, but the video does not show appellant putting any items in his pockets; different Wal-Mart employees gave different testimony about when and where the hard drive and empty packaging were recovered.

There is no requirement that either the prosecution or the victim in a theft case produce any recovered stolen property at trial. The jury was free to question the accuracy and credibility of the employees' testimony in the absence of the property, but was not required to do so. That testimony, if believed, supports a reasonable inference that the "Passport" device and cell phone cover found in appellant's possession came from the empty packaging which appellant was seen placing on a shelf in the sporting goods section. Even if there were other reasonable inferences which could be drawn from the evidence, that circumstance would not require reversal of the judgment. (*People v. Nelson, supra,* 51 Cal.4th at p. 210 ["if the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding"].)

To the extent appellant suggests Merritt mistook appellant's hot spot device for the "Passport" device and appellant did not actually have a "Passport" in his possession, we do not agree. Merritt may have had difficulty telling the two devices apart but all Wal-Mart employees testified that they kept the "Passport" and returned the hot spot to appellant (or his friend), demonstrating that there were two separate, albeit similar, devices.

Appellant is correct that there are inconsistencies in the employees' testimony and between that testimony and some aspects of the videos of appellant's activity. "Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the

credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]" (*People v. Maury* (2003) 30 Cal.4th 342, 403.)

## DISPOSITION

The judgment of conviction is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


MINK, J.[*]


We concur:


MOSK, Acting P. J.


KRIEGLER, J.

---

[*]    Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.