Filed 9/23/25  P. v. Dimmick CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>BENJAMIN ERVIN JAMES DIMMICK,<br><br>        Defendant and Appellant. | A170507, A170532<br><br>(Mendocino County<br>Super. Ct. Nos. 23CR00536,<br>23CR01795, 23CR03018) |

Defendant Benjamin Dimmick brings this consolidated appeal to challenge the judgment after a jury convicted him of arson, burglary, and two counts of failing to appear with enhancements for being released on bail at the time of the crime.  Defendant thereafter pleaded no contest in two related cases to two felony counts of failure to appear, with enhancements for being released on bail at the time of the crime, and two vehicular misdemeanor counts.  Defendant contends reversal of his burglary conviction is required because (1) the prosecutor failed to timely disclose an exculpatory toxicology report in violation of *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215] (*Brady*) and (2) there is no substantial evidence proving he had the requisite specific intent to commit burglary.  We affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

On August 16, 2023, an information was filed in case No. 23CR00536 charging defendant with arson of a structure (Pen. Code, § 451, subd. (c); count one)[1] and commercial burglary (§§ 459, 460, subd. (b); count two). The information further alleged the arson was committed in an area subject to an emergency declaration by the Governor within the meaning of section 454, subdivision (a)(2). Finally, the information alleged aggravating factors under California Rules of Court, rules 4.421(a)(1) and (7) and 4.421(b)(1)–(3) and (5).

In another information filed on the same day, in case No. 23CR01795, defendant was charged with two felony counts of failure to appear (§ 1330.5). As to each count, it was alleged defendant was released on bail at the time of the offense in violation of section 12022.1.

On December 4, 2023, a complaint was filed in case No. 23CR03018 charging defendant with two misdemeanors: (1) driving under the influence of a drug (DUI) (Veh. Code, § 23152, subd. (f)); and (2) hit and run (Veh. Code, § 20002, subd. (a)).

## I.   *Case No. 23CR00536: Felony Arson and Burglary.*

On February 17, 2023, approximately 11 p.m., officers from the Mendocino County Sheriff's Office responded to an alarm at an auto body shop in Ukiah. The officers discovered a hole punched through the window of the shop's front door that was the approximate size of a nearby landscaping rock. Inside the shop, the officers saw defendant standing among several fires and heavy smoke. Initially, they were unable to gain entry because the front door was locked from the inside and blocked by a debris-filled trash bin.

---

[1] Unless otherwise specified, all statutory citations herein are to the Penal Code.

Eventually, the officers were able to reach through the hole in the window to unlock the door and push past the bin. Defendant was apprehended after ignoring several commands to exit the shop.

After the fire department arrived to extinguish the fires, investigators discovered a flame torch used by defendant to ignite the fires. A trained fire investigator opined that defendant intentionally set multiple fires throughout the shop. The shop's repair costs reached approximately $50,000.

## II. *Case No. 23CR03018: Misdemeanor DUI/Hit and Run.*

On February 17, 2023, a California Highway Patrol (CHP) officer responded to a single-vehicle collision. The officer discovered a damaged sedan in Highway 101's center divider. Inside the vehicle, the officer found a rental agreement under defendant's name and two prescription bottles, also under his name, for buprenorphine/naloxone and ibuprofen.

After learning defendant had been detained at a nearby auto body shop for suspected burglary and arson (§§ 459, 451), the CHP officer questioned him. Defendant told the CHP officer that he "smoked 'meth' and started driving his vehicle because he thought someone was after him." Defendant subsequently failed field sobriety tests. Blood was then drawn from defendant and used to generate a toxicology report.

## III. *Case No. 23CR01795: Failure to Appear (Two Counts).*

Defendant was released on bail after being charged with burglary and arson on March 7, 2023. However, defendant failed to appear in court despite being ordered to do so on two subsequent occasions, April 13 and June 22, 2023.

## IV. *Verdict, Pleas, Sentencing and Appeals.*

On December 20, 2023, a jury found defendant guilty of burglary and arson in case No. 23CR00536. On January 11, 2024, defendant then pleaded

no contest to all charges in the remaining cases and admitted the on-bail enhancement allegations.

On May 2, 2024, the trial court sentenced defendant to an aggregate term of 12 years 4 months. Defendant filed timely notices of appeal on May 3, 2024, identifying case No. 23CR00536 and on May 7, 2024, identifying case Nos. 23CR01795 and 23CR03018.

## DISCUSSION

Defendant raises two issues on appeal.[2] He contends his burglary conviction must be reversed because (1) the prosecutor failed to timely disclose an exculpatory toxicology report in violation of the *Brady* rule and (2) the evidence was insufficient to prove he had the requisite specific intent to commit burglary. We address each issue *post*.

## I.    *No Brady Violation.*

Defendant seeks reversal under *Brady*, arguing the prosecution's untimely disclosure of a material, exculpatory toxicology report reflecting controlled substances in his blood prejudiced his case. We disagree.

### A.    *Brady*

"Under *Brady, supra*, 373 U.S. 83, and its progeny, the prosecution has a constitutional duty to disclose to the defense material exculpatory evidence, including potential impeaching evidence. The duty extends to evidence known to others acting on the prosecution's behalf, including the police. [Citations.] The duty to disclose 'exists even though there has been no request by the accused.' [Citations.] For *Brady* purposes, evidence is

---

[2] Defendant additionally argued in his opening brief that one of the on-bail enhancements attendant to the failure to appear counts in case No. 23CR01795 was unauthorized and must be struck. However, in his reply brief, defendant acknowledged being mistaken on this point and abandoned his argument. Accordingly, we decline to address it.

4

material if it is reasonably probable its disclosure would alter the outcome of trial." (*People v. Superior Court* (*Johnson*) (2015) 61 Cal.4th 696, 709–710 (*Johnson*).)

To establish a *Brady* violation, a defendant must show each of the following: (1) the evidence was favorable to the defense, either because it was exculpatory or impeaching; (2) the prosecution suppressed the evidence, either willfully or inadvertently; and (3) the suppression resulted in prejudice, meaning there is a reasonable probability of a different result had the evidence been disclosed. (*Johnson, supra*, 61 Cal.4th at p. 710.)

Whether the prosecution violated *Brady* by suppressing material exculpatory evidence presents mixed questions of law and fact on appeal. We defer to the trial court's factual findings when they are supported by substantial evidence, and we independently review the court's legal determinations as to whether the three elements of a *Brady* violation are satisfied. (*People v. Salazar* (2005) 35 Cal.4th 1031, 1042 (*Salazar*).)

**B.     Relevant Facts.**

On December 20, 2023, at the close of evidence in defendant's arson/burglary trial, defense counsel informed the court that, the previous day, her office received a toxicology report from the prosecution that "confirms methamphetamine, among other substances," were in defendant's blood on February 17, 2023, the day of the crimes. Defense counsel moved for a mistrial, arguing that, had they received the report earlier, they would have used this "exculpatory" evidence in mounting a defense. Defense counsel explained: "Using this toxicology report to show that [defendant] was under the influence at the time of the alleged offenses could negate that he acted with a specific intent [to commit burglary] upon entry of the building . . . ."

5

The prosecutor explained the toxicology report was prepared in connection with, and was part of discovery in, defendant's misdemeanor DUI case, which had "been trailed by the public defender's office . . . ." The prosecutor added that the report was generated on November 27, 2023, from blood drawn from defendant a few hours after his arrest for arson and burglary and was sent to the public defender's office on December 19, 2023.[3] The prosecutor described the report as showing "what appears to be a low level of methamphetamine, a low level of THC/marijuana, and a low level of [buprenorphine]."

After hearing from both sides, the trial court denied defendant's motion for mistrial, finding that defense counsel was aware of evidence of his intoxication, "except the quantitative analysis of the toxicology report," and had opportunities to question witnesses, including the investigating officers, about it. The court then queried whether defense counsel "chose not to open that door apparently because [the intoxication evidence] could have been just as incriminating as exculpatory." In any event, the court found, the defense strategy would likely not have changed based on the new information in the report identifying the levels of controlled substances in defendant's blood since both parties already presented evidence of defendant's state of mind to the jury. We agree with the court's analysis.

### C.     Analysis.

The People concede the toxicology report was inadvertently suppressed by the prosecution. Nonetheless, we conclude the suppression of this evidence does not amount to a *Brady* violation because there is no reasonable probability that had the jury known that defendant's blood contained certain

---

[3] Defendant was represented by the public defender's office in both the felony arson/burglary case and the misdemeanor DUI/hit and run case.

levels of controlled substances and, thus, that he was acting under the influence of drugs, " ' "the result of the proceeding would have been different." ' " (*Salazar, supra*, 35 Cal.4th at pp. 1042–1043 [holding that materiality for *Brady* purposes "requires more than a showing that the suppressed evidence would have been admissible [citation], [or] that the absence of the suppressed evidence made conviction 'more likely' [citation]"].)

As the jury was instructed, defendant could be found guilty of committing burglary (§ 459) only if the prosecutor proved that when he entered the auto body shop he intended to commit one or both of the following felonies once inside: "(1) vandalism to a business in an amount greater than $400.00, and/or (2) simple arson."

While a defendant may assert the defense of voluntary intoxication to negate his or her specific intent to commit burglary (*People v. Bedolla* (2018) 28 Cal.App.5th 535, 541–542), here, defendant did not do so. Defendant suggests this failure arose from the prosecution's failure to timely disclose the toxicology report. However, even without the information in the report identifying the exact levels of controlled substances detected in defendant's blood, both parties were well aware of other evidence available at the time of trial that related to defendant's voluntary intoxication.

For example, according to the police report, Deputy Dye, the officer who responded to reports of criminal activity at the auto body shop, was told by the CHP shortly after defendant's arrest for arson and burglary that the CHP had determined defendant was operating his vehicle under the influence of a controlled substance earlier in the evening when he crashed his vehicle on Highway 101 and fled on foot. Confirming as much, defendant, when questioned by Deputy Dye, admitted that he had smoked methamphetamine that evening and was "hearing voices" when he crashed. Defendant

7

explained to Deputy Dye that he ran to the auto body shop and used a rock to break inside because he believed "people [were] chasing him." He then ignited the fires in order to summon help because he lost his phone.

Similarly, the CHP's report stated that defendant told Officer Biaggi that he had not used " 'white dope' " for several years, until that very day. Based on this information, the officer administered field sobriety tests, which defendant failed, before making the determination that defendant had operated his vehicle under the influence of a controlled substance.

Defense counsel no doubt could have offered this evidence to raise a voluntary intoxication defense to negate defendant's specific intent to commit burglary. (See *People v. Bedolla, supra,* 28 Cal.App.5th at pp. 541–543.) In fact, Deputy Dye testified at trial and could easily have been examined about defendant's statements during police questioning that he had used methamphetamine and was experiencing paranoidal thoughts. Moreover, defendant was represented by counsel from the public defender's office in both the felony arson/burglary case and the misdemeanor DUI/hit and run case. Defense counsel admitted to the trial court in the arson/burglary case that she watched the video recording of defendant being administered (and failing) field sobriety tests prior to his DUI/hit and run arrest.[4] Nonetheless, defense counsel chose not to bring these facts before the jury. As the trial court noted, defense counsel likely made the reasonable strategic decision that evidence of defendant's drug use and paranoia would hinder rather than help his case before the jury.

---

[4] The prosecution represented to the court that the toxicology report was produced in case No. 23CR03018, which had "been trailed by the public defender's office . . . ."

8

In any event, even without explicitly mentioning defendant's drug use, defense counsel seized upon his seemingly incoherent behavior during closing arguments: "So, clearly, Mr. Dimmick was acting strangely that day. He was acting erratically. He goes into the building, locks himself in, locks the dead bolt behind him and starts lighting things on fire. So what Mr. Dimmick did is strange. It doesn't make sense. But that doesn't mean that he's guilty . . . . [¶] . . . [¶] . . . And you don't know why he did that. But your commonsense [*sic*] can tell you that it doesn't make sense and that it's not malicious and that he did not enter with the required intent on the burglary charge." Counsel's argument invited the jury's consideration of defendant's state of mind and, in particular, his inability to form the requisite specific intent to commit burglary, notwithstanding counsel's apparent reluctance to argue voluntary intoxication.

Finally, as we discuss in part II *post*, there was strong evidence of defendant's specific intent to commit burglary regardless of his use of controlled substances. It was undisputed defendant deliberately acquired a rock from 20 feet away to break into the auto body shop, barricaded the front door to the shop with a debris-filled trash bin once he was inside, and then used a torch to ignite multiple fires. Defendant's actions are just the sort of intentional, goal-oriented actions that fall under the definition of a specific intent crime. (*People v. Hood* (1969) 1 Cal.3d 444, 457 [specific intent crime "refers to defendant's intent to do some further act or achieve some additional consequence"].)

Under these circumstances, we conclude there is no reasonable probability the result at trial would have been different had defense counsel received the toxicology report in a timely manner. (See *People v. Jimenez* (2019) 32 Cal.App.5th 409, 422 [when police officer testimony independently

9

corroborated information in a nondisclosed police report, "it is not reasonably probable [defendant's] use of the report would have produced a more favorable outcome for him"].) Accordingly, we affirm the trial court's finding that the late disclosure was not prejudicial under *Brady*.[5] (*Salazar, supra*, 35 Cal.4th at pp. 1042–1043 [" 'there is never a real "*Brady* violation" unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict' "].)

## II. *Substantial Evidence of Intent to Commit Burglary.*

Defendant also contends his constitutional right to due process was violated because the evidence was insufficient to prove he harbored the requisite specific intent to commit burglary when he entered the shop. Not so.

"The crime of burglary consists of an act—unlawful entry— accompanied by the 'intent to commit grand or petit larceny or any felony.' (§ 459.) One may by [*sic*] liable for burglary upon entry with the requisite intent to commit a felony or a theft (whether felony or misdemeanor), regardless of whether the felony or theft committed is different from that contemplated at the time of entry, or whether any felony or theft actually is

---

[5] In a petition for writ of habeas corpus filed December 18, 2024, in case No. A171981 (petition), defendant raises a related argument that his burglary conviction should be reversed because, in violation of his constitutional right to effective assistance of counsel, his trial attorney failed to request discovery of the toxicology report generated in the companion DUI/hit and run case. Similarly here, defendant reasons that, had the report been discovered, "it would have shown that [he] could not have formed the specific intent necessary to sustain a burglary conviction." We have denied defendant's petition by separate order filed this date. (See *People v. McGehee* (2016) 246 Cal.App.4th 1190, 1207, fn. 3 [claim of ineffective assistance of counsel requires a showing of professional deficiency and prejudice, meaning, a reasonable probability of a more favorable result but for counsel's unprofessional error].)

committed. [Fn. omitted.]" (*People v. Montoya* (1994) 7 Cal.4th 1027, 1041–1042.)

When, as here, the defendant challenges the sufficiency of the evidence supporting a finding of guilt on appeal, we must examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence from which the jury could find the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 576–577.) Substantial evidence is evidence that is " ' "reasonable, credible, and of solid value . . . ." ' " (*People v. Maury* (2003) 30 Cal.4th 342, 396.) We do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses. (*People v. Jones* (1990) 51 Cal.3d 294, 314.) Further, we accept reasonable inferences the jury might have drawn from both direct and circumstantial evidence. (*People v. Maury, supra,* 30 Cal.4th at p. 396; see *People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1416–1417 [a finding of fact must be an inference drawn from evidence and not " ' " " 'mere speculation as to probabilities without evidence' " ' "], overruled on other grounds in *People v. Farwell* (2018) 5 Cal.5th 295, 304, fn. 6.)

"Although it is the duty of the [trier of fact] to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the [trier of fact], not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' " (*People v. Bean* (1988) 46 Cal.3d 919, 932–933.)

"Because intent is rarely susceptible of direct proof, it may be inferred from all the facts and circumstances disclosed by the evidence. [Citations.] Whether the entry was accompanied by the requisite intent is a question of fact for the jury. [Citation.] 'Where the facts and circumstances of a particular case and the conduct of the defendant reasonably indicate his purpose in entering the premises is to commit larceny or any felony, the conviction may not be disturbed on appeal.' " (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1245.)

Applying these principles, we find substantial evidence supporting the jury's finding that defendant unlawfully entered the auto body shop with the requisite intent to commit one or both of the following felonies: "(1) vandalism to a business in an amount greater than $400.00, and/or (2) simple arson." In particular, defendant's unlawful purpose upon entry was demonstrated by the facts that he carried a rock "from 20 feet away" to break open the front door, locked the door from the inside, used a debris-filled trash bin to barricade himself inside, and then intentionally lit multiple fires. Moreover, when responding officers arrived shortly thereafter, defendant refused their repeated commands to exit the shop, which required them to unlock the door and enter the smoke-filled shop to apprehend him.

These circumstances suffice to establish the requisite intent: "As a practical matter, if the defendant commits, or gives some indication of intending to commit, theft or a felony in a building shortly after entering it, no great inferential leap is necessary to conclude that the intent to commit the supporting offense existed at the time of entry. Thus, temporal or spatial proximity between the entry and the target or predicate crime are factors that may reasonably be considered by the jury when determining whether

the requisite intent existed at the moment of entry, but they are not elements of the crime of burglary." (*People v. Kwok, supra*, 63 Cal.App.4th at p. 1246.)

Defendant counters that the "record supports a finding that he did not form an intent to commit a felony, e.g., vandalism or arson, until after he entered the business, locked and barricaded the door behind him, and inadvertently found a torch with which to light various paper products on fire." He ignores our standard of review. As stated *ante*, when, as here, the circumstances reasonably justify the jury's findings, reversal is not warranted even if " ' "the circumstances might also be reasonably reconciled with a contrary finding . . . ." ' " (*People v. Bean, supra*, 46 Cal.3d at p. 933.) Accordingly, because the circumstances described *ante* reasonably justify the jury's finding that defendant unlawfully entered the auto body shop with the intent to commit felony vandalism or arson, we affirm.

## DISPOSITION

The judgment is affirmed.

Jackson, P. J.

WE CONCUR:

Burns, J.
Chou, J.

A170507, A170532/*People v. Benjamin Ervin James Dimmick*